## HART ENTERPRISE ELECTRICAL CO., Inc., v. STEWART.

### No. 16358.

Court of Appeal of Louisiana. Orleans.

June 22, 1936.

Solomon S. Goldman, of New Orleans, for appellant.

Lemle, Moreno & Lemle, of New Orleans, for appellee.

JANVIER, Judge.

Hart Enterprise Electrical Co., Inc., claiming to be the owner of two electric motors which, at the time of the filing of the suit, were in the possession of defendant, S. J. Stewart, prayed for judgment de-

creeing it to be the owner of the said motors, and, at the same time, prayed for and obtained a writ of sequestration under which the civil sheriff for the parish of Orleans seized the said motors and took them into his possession.

Stewart denied plaintiff's ownership of the motors and averred that the true owner thereof, to wit, Consolidated Mills, Inc., had, some two years previously, contracted with him for the sale of the said motors and had authorized him to take them into his possession and clean and repair them so that they might be sold by him, and had stipulated that out of the proceeds of the sale, it, the said owner, should receive $125, the balance to be retained by Stewart.

In a reconventional demand the said defendant alleged that he had repaired the motors at a cost of $150, and he prayed that they be returned to him and that "there be judgment in his favor on the amount demanded." In the alternative, he prayed for judgment condemning plaintiff, the Hart Enterprise Electrical Co., Inc., to pay him $150, the amount of his bill, and that his lien and privilege on the motors be recognized.

In the court, a qua, there was judgment in favor of plaintiff recognizing it as the owner of the motors and dismissing the reconventional demand of Stewart. The latter has appealed.

The record shows the following facts:

On July 13, 1933, Consolidated Mills, Inc., authorized Stewart to take possession of the two motors and to clean and "put them in saleable condition" and to then sell them and remit to it $125.

On August 23, 1935, Stewart had not sold the motors, and, on that day, Consolidated Mills, Inc., contracted to sell them to the present plaintiff corporation and gave to it a letter directed to Stewart and authorizing him to deliver the said motors to the plaintiff corporation. The motors had been cleaned and made salable by Stewart, who, in removing them to his shop and doing the work on them, had expended for labor $93.65 and for material $6, making a total for labor and material of $99.65. The record further shows to our satisfaction that a proper charge for profit and supervision and overhead on such a job would be $49.82, which is the amount which Stewart added to his bill and which amount made a total of $149.47 instead of $150 as originally claimed.

The present status of the controversy is that Stewart maintains that he should be paid the amount of his bill, and that his lien and privilege should be recognized and that he should be permitted to retain possession of the motors under his privilege which exists, under article 3217, C.C., as we shall hereafter show, only so long as he has possession.

He has no interest in questioning the validity of the sale by the original owner, Consolidated Mills, Inc., to Hart Enterprise Electrical Co., Inc. The sale, so far as he is concerned, was a valid and complete one, and the letter of the former directing him to deliver the motors to the latter is sufficient evidence of ownership so far as he is concerned. If he is entitled to a lien and privilege, and if that lien and privilege still existed at the time of the sequestration, then it is of no concern to him that the original owner has sold the motors, because no sale could divest his lien. The sale of an article which is encumbered with a lien or privilege necessarily is made subject to the lien or privilege. It would be a worthless lien which could be removed by sale.

The real question is whether or not there is a lien, and if so what is the amount of it. Stewart contends that it results from article 3217 of the Civil Code and that according to that article it exists so long as "the thing continues still in his possession."

Plaintiff, on the other hand, asserts that if Stewart, at any time, was entitled to a lien and privilege it came into existence solely as a result of Act No. 209 of 1926, and that by the very terms of that act it expired "ninety (90) days from the date of making of such repairs. * * *"

It is the contention of plaintiff, the Hart Enterprise Electrical Co., Inc., that the act of 1926, to which we have referred, has application to all cases where repairs to machinery are made by one who operates a garage or place where automobile trucks or other machinery are repaired, and that such shop or garage operator is entitled only to the lien created by the act of 1926, which lien expires 90 days from the date of the making of the repairs.

Stewart contends, however, that the lien granted by the act of 1926 is in addition to that which is granted by article 3217 of the Code, and that the two liens are not in any way in conflict. He maintains that it was the purpose of the framers of the act of 1926 to permit one who makes such repairs

to deliver the article repaired to the owner without immediately losing his lien thereon.

It is evident that under article 3217 of the Code the moment the repairman delivers the repaired article to the owner the lien no longer attaches to it, and we believe that it was a realization of this fact which prompted the framers of the act of 1926 to create in favor of the repairman a lien for a limited period even after the delivery of the repaired article.

In the instant case the motors remained in the possession of Stewart. Therefore, under the view which we take, his lien subsisted until the seizure by the sheriff, and, in fact, subsisted during the period of the seizure and still subsists because a lienholder is not deprived of his lien when the article on which the lien bears is judicially sequestered. It is argued that in any event Stewart is not entitled to a lien for the entire amount of his claim because article 3217 of the Code, which recognizes the lien, limits it to "the price of his labor, on the movable which he has repaired or made." But it has been held by this court in Cozzo v. Ulrich, 14 Orleans App. 137, that "the artisan's lien covers not only his labor, but also the material by him furnished."

There is, however, no liability "in personam" in the Hart Enterprise Electrical Company, Inc., for the amount of Stewart's claim. The record clearly demonstrates that that company did not conspire with the Consolidated Mills, Inc., to defeat Stewart's lien. It seems to have purchased the motors or to have agreed to purchase them in perfect good faith and without any knowledge as to any rights in Stewart. At any rate, there is no evidence as to any such knowledge or as to any bad faith. Therefore, although Stewart is entitled to a lien and privilege on the motors, he is not entitled to a judgment "in personam" against the Hart Company.

The facts in no way resemble those which were found in Hurwitz-Mintz Furniture Company v. Edward B. Fabacher Auction Exchange, 167 So. 162, 164, in which we held that one who conspires to defeat the lien of another is liable to that other under the provisions of article 2315 of the Civil Code. There the defendant "had knowledge that the furniture which he purchased * * * was incumbered * * * and, * * * nevertheless, secretly removed the furniture * * * and immediately disposed of it."

Nor do the facts of this case make it analogous to Seelig v. Dumas, 48 La.Ann. 1494, 21 So. 91, because there, according to the syllabus, the actions of the defendant in disposing of the property were fraudulent; or, at least, with knowledge of the fact that the plaintiff was being frustrated "in the legal exercise of his rights." The court, in that case, said that under such circumstances the lienholder should not be relegated "to a tedious and possibly fruitless pursuit and search for the property" and, therefore, held that he was entitled to a personal judgment against the person responsible. Such a situation is not found here.

It has been decided that in such case, as this, although there may be no question concerning the ownership of the article on which the artisan is entitled to a privilege, he may, nevertheless, retain possession of the article and force the sale thereof in order that he may be paid out of the proceeds. See Gayarre v. Tunnard, 9 La.Ann. 254. There the Supreme Court expressly and squarely held that to the artisan there are afforded, by article 3184 of the Civil Code (now article 3217), two methods of procedure which are not conflicting. In the first place, he may retain the article until his bill is paid and in the second place, if it is not paid, he may proceed to have the article sold under his privilege.

In another branch of the case of Cazzo v. Ulrich, reported in 13 Orleans App. 257, we said:

"It will thus be seen that possession is of the essence of the privilege, and that the privilege is lost at the same time as the possession. This was the basis of the opinion in Gayarre v. Tunnard, 9 La.Ann. 254.

"To the same effect is No. 3 of Article C.N. 2102; 1 Trop.Priv.Hyp., No. 259, p. 331; 22 Baudry-Lac, p. 447, No. 474, 476; 3 Aubry & Rau, No. 256, bis., pp. 117, 153; 37 Dalloz Rep.Leg. p. 89, No. 319, 322; 1 Persil p. 138. See also 2 Kent Marg., p. 638 to 640; 20 Am.Eng.Enc.Law, Vo. Mechanics' Lien, p. 527; 3 Id., Bailments, p. 760; 19 Id., Vo. Liens, p. 10."

Therefore, defendant is entitled to retain possession of the motors under his privilege.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended, and that the lien and privilege and right of retention of S. J. Stewart, defendant, plaintiff in reconvention, on the two motors sequestered, be, and

it is, recognized up to the sum of $149.47, with legal interest from judicial demand, and it is further ordered, adjudged, and decreed that the writ of sequestration be, and it is, dissolved at the cost of plaintiff-appellee.

It is further ordered that in all other respects the judgment appealed from be, and it is, affirmed at the cost of plaintiff-appellee.

Amended and affirmed.